IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | |
| PARRIS PIZZA COMPANY, LLC, f/d/b/a DOMINO'S PIZZA | **COMPLAINT** |
| Defendant. | Jury Trial Demanded |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and to provide appropriate relief to Charging Party Andrew D. Ross and other similarly aggrieved Black employees who were adversely affected by such practices. As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission (the "Commission" or the "EEOC") alleges that Defendant Parris Pizza Company, LLC ("Defendant" or "Parris Pizza"), which operated a franchise of Domino's Pizza, LLC ("Domino's") in Olean, New York, violated Title VII by subjecting Ross and other similarly aggrieved Black employees to racial harassment, by creating and maintaining a hostile work environment because of their race (Black), and by constructively discharging Ross.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII"), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of New York.

## PARTIES

3.  Plaintiff, the EEOC, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.  At all relevant times, Defendant, a Pennsylvania limited liability company that operated a Domino's franchise (Store 3480), was doing business in the State of New York and the City of Olean, and has continuously had at least 15 employees.

5.  At all relevant times, Defendant continuously was an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6.  More than thirty days prior to the institution of this lawsuit, Ross filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant.

7.  On August 1, 2022, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant had violated Title VII and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the unlawful employment practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On September 7, 2022, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Beginning in at least 2019, Defendant engaged in unlawful employment practices at its Domino's franchise, Store 3480, located in Olean, New York, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-2(a)(1). These unlawful practices include, but are not limited to, the following:

  a. Defendant engaged in race discrimination against Ross and other Black employees by subjecting them to severe or pervasive racial harassment, and by creating and maintaining a hostile work environment, because of their race (Black).

  b. Ross, a Black employee, was subjected to unlawful discrimination while working for Defendant as a delivery driver and "inside staff" (responsible for tasks such as preparing food, working the register, and cleaning) from at least 2019 until April 2021.

  c. Other Black employees also were subjected to unlawful discrimination while employed by Defendant.

    d.      White managers and co-workers openly subjected Ross and other Black employees to numerous racist comments. The harassment included but was not limited to the following:

    i.      Shift managers Andrew Harmon and Dakota Spencer used racist language—including "nigger," "nigga," and "boy"—every shift.

    ii.      Another "inside staff" employee, Joseph Perkins, also used the slur "nigga."

    iii.      A female Black employee "told anyone and everybody" that she did not like the use of the "n-word," but it continued.

    iv.      Spencer overheard a female Black employee telling one White co-worker (who did not use racist language) not to use the "n-word." Spencer, who was in the bathroom, emerged and immediately approached the Black employee. He got right in her face, stared into her eyes, and threateningly said the word, "nigga."

    v.      Harmon told Ross a story that involved a Black person, whom Harmon "aggressively" referred to as "that nigger." He also used the "n-word" as a noun, for example, dropping a utensil and saying, "the nigger slipped out of my hand."

    vi.      Harmon and Spencer also made negative, generalized comments about Black people, such as how "most woke people are Black" or "most poor people are Black."

    vii.      Spencer acted disgusted and then walked away when he saw Ross watching an NBA game in which Black players wore T-shirts with messages about Black Lives Matter.

    viii.      On or about April 19, 2021, Harmon affected a Southern accent and told Ross to "Go hang them tags, boy," mimicking the voice and mannerisms of a slave master. Spencer laughed when he heard Harmon do this. Ross objected and said that the language was racist. Spencer repeated the language using a similar voice, and Harmon laughed. After Ross again

objected, Spencer told Ross to go "get a tampon" if he was so upset. Spencer repeatedly asked Ross if he needed to get a tampon.

      ix.      Ross and other Black employees told Harmon and Spencer that their use of racist language was offensive and asked them to stop. Harmon and Spencer did not stop using the language.

      e.      Ross and other Black employees repeatedly objected to the racial harassment by Harmon and Spencer and repeatedly complained to Defendant about the racial harassment at Store 3480, but Defendant did nothing and the harassment continued unabated.

      f.      Two other Black employees each twice reported Harmon's and Spencer's use of racist language to Assistant Manager Jermaine Battle, but Battle brushed off their concerns and refused to address the issue.

      g.      In April 2021, Ross complained to Battle about Harmon and Spencer calling him "boy" and mimicking the voice and mannerisms of a slave master. Battle told Ross to talk to Defendant's owner, Bill Parris.

      h.      Ross called Parris on the phone and told him about the most recent incident, as well as the repeated use of the "n-word" throughout his employment.

      i.      Parris told Ross that he would speak with Harmon and Spencer.

      j.      Parris subsequently called both Harmon and Spencer. Harmon acknowledged saying "boy." Harmon also told Parris that he was sorry, but he did not think his statements were racist. Spencer denied making any racist statements.

      k.      Later that day, Ross walked by Spencer and saw that Spencer was red in the face, staring at him angrily. Spencer was holding scissors in a threatening way, gripping them in his fist.

      l.      Ross did not feel safe and left work.

  m. Because of the harassment he had experienced and Defendant's failure to adequately address it, Ross was compelled to resign.

  n. The next day, Parris came to Store 3480. He spoke to Harmon and Spencer but failed to take any disciplinary action.

  o. Approximately thirty days later, Parris promoted Harmon to Assistant Manager and increased his pay. Spencer, too, received an increase in pay.

  13. The unlawful employment practices complained of in paragraph 12 above were intentional.

  14. The unlawful employment practices complained of in paragraph 12 above were done with malice or with reckless indifference to the federally protected rights of Ross and other similarly aggrieved Black employees who were adversely affected by such practices.

  15. The effect of the practices complained of in paragraph 12 above has been to deprive Ross and other similarly aggrieved Black employees of equal employment opportunities and otherwise adversely affect their status as employees, because of their race (Black).

## **PRAYER FOR RELIEF**

  Wherefore, the Commission respectfully requests that this Court:

  A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, attorneys, and all persons in active concert or participation with it, from maintaining a racially hostile work environment.

  B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for Black employees and that eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Ross and other similarly aggrieved Black employes by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Ross.

D. Order Defendant to make whole Ross and other similarly aggrieved Black employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 12 above, in amounts to be determined at trial.

E. Order Defendant to make whole Ross and other similarly aggrieved Black employees by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices complained of in paragraph 12 above, including emotional pain, suffering, inconvenience, and humiliation, in amounts to be determined at trial.

F. Order Defendant to pay Ross and other similarly aggrieved Black employees punitive damages for its malicious and reckless conduct, as described in paragraph 12 above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: February 2, 2023
      Buffalo, New York

                              Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
131 M Street, N.E.
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney
jeffrey.burstein@eeoc.gov

NORA CURTIN
Assistant Regional Attorney
nora.curtin@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

/s/ *James E.B. Bobseine*
James E.B. Bobseine
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Buffalo Local Office
300 Pearl Street, Suite 450
Buffalo, NY 14202
Tel: 716-431-5023
Fax: 716-551-4387
Email: james.bobseine@eeoc.gov